12 6205

JS 44 (Rev. 09/11)

CMR

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Everett Terry

**(b)** County of Residence of First Listed Plaintiff: Chester County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Arthur D. Goldman, Esq. & Kenneth J. Zoldan, Esquire
P.O. Box 115, Paoli, PA 19301
(484) 343-2856

**DEFENDANTS**
Yeadon Borough, Yeadon Borough Council, Delores Butler, Asher Kemp, Nelva Right, John Holden, Jack Bryn, Penny McDonald, Denise Stinson, Deborah Robinson-Howell

County of Residence of First Listed Defendant: Delaware County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Med. Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition)
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. section 1983

Brief description of cause:
Civil Rights

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND $**

CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ____ DOCKET NUMBER ____

NOV 0 2 2012

DATE: 11/02/2012

SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

12-CV-6205

CMR

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 314 W. 15th Street, Chester, PA 19013

Address of Defendant: 600 Church Lane, Yeadon, PA 19050

Place of Accident, Incident or Transaction: Yeadon, PA

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☑

Does this case involve multidistrict litigation possibilities? Yes☐ No☑

*RELATED CASE, IF ANY:*

Case Number: ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes☐ No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ______

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) ______

## ARBITRATION CERTIFICATION

*(Check Appropriate Category)*

NOV 0 2 2012

I, Kenneth J. Zoldan, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 11-2-12 Kenneth J. Zoldan (Attorney-at-Law) 72430 (Attorney I.D.#)

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 11-2-12 Kenneth J. Zoldan (Attorney-at-Law) 72430 (Attorney I.D.#)

CIV. 609 (5/2012)



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CASE MANAGEMENT TRACK DESIGNATION FORM**

Everett Terry : CIVIL ACTION

v.

Yeadon Borough, et al. : NO. 12 6205

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (✓)

| Nov. 2, 2012 | Arthur D. Goldman | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 484-343-2856 | 610-296-7730 | agoldman@arthurgoldmanlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

NOV 02 2012

(Civ. 660) 10/02

$350.00



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **EVERETT K. TERRY**<br>314 W. 15 Street<br>Chester, Pennsylvania 19013,<br><br>Plaintiff<br><br>v.<br><br>**YEADON BOROUGH**<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br><br>and<br><br>**BOROUGH COUNCIL**<br>**YEADON BOROUGH**<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br><br>and<br><br>**DOLORES JONES-BUTLER,**<br>**MAYOR**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in her official<br>and individual capacity)<br><br>and<br><br>**ASHER KEMP, JR.,**<br>**COUNCIL PRESIDENT**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in his official<br>and individual capacity) | 12 6205 |

| | |
|---|---|
| and<br><br>**JACK BYRNE,**<br>**COUNCILMAN**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in his official<br>and individual capacity)<br><br>and<br><br>**JOHN HOLDEN,**<br>**COUNCILMAN**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in his official<br>and individual capacity)<br><br>and<br><br>**FLORENCE MCDONALD,**<br>**COUNCILWOMAN**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in her official<br>and individual capacity)<br><br>and | |

| | |
|---|---|
| **DEBORAH ROBINSON-HOWELL, COUNCILWOMAN**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in her official and individual capacity)<br><br>and<br><br>**DENISE STINSON, COUNCILWOMAN**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in his official and individual capacity)<br><br>and<br><br>**NELVA WRIGHT, COUNCILWOMAN**<br>c/o Yeadon Borough<br>600 Church Lane<br>Yeadon, Pennsylvania 19050<br>(in her official and individual capacity),<br><br>Defendants | |

**COMPLAINT OF PLAINTIFF EVERETT K. TERRY**

Plaintiff Everett K. Terry ("Plaintiff" or "Officer Terry"), complain of the Defendants as follows:

**PARTIES**

1. Plaintiff Everett K. Terry ("Officer Terry") is an adult individual residing at 314 W. 15 Street, Chester, Pennsylvania 19013, and was formerly employed as a police officer by the Borough of Yeadon and works currently as a security guard.

2. Defendant Yeadon Borough ("Borough") is a political subdivision/municipality/governmental unit/entity organized and existing under the laws of the Commonwealth of Pennsylvania with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

3. Defendant Yeadon Borough Council ("Council") is a political subdivision/municipality/governmental unit/entity organized and existing under the laws of the Commonwealth of Pennsylvania with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

4. Defendant Dolores Jones-Butler ("Ms. Jones-Butler") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, the Mayor of Yeadon Borough with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

5. Defendant Asher Kemp, Jr. ("Mr. Kemp") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, Council President of the Yeadon Borough Council with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

6. Defendant Jack Byrne ("Mr. Byrne") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, a member of the Yeadon Borough Council with an

office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

7. Defendant John Holden ("Mr. Holden") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, a member of the Yeadon Borough Council with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

8. Defendant Florence McDonald ("Ms. McDonald") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, a member of the Yeadon Borough Council with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

9. Defendant Deborah Robinson-Howell ("Ms. Howell") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, a member of the Yeadon Borough Council with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

10. Defendant Denise Stinson ("Ms. Stinson") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, a member of the Yeadon Borough Council with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

11. Defendant Nelva Wright ("Ms. Wright") is an adult individual and resident of Yeadon Borough and was, at all times relevant herein, a member of the Yeadon Borough Council with an office for the conduct of governmental affairs located at 60 Church Lane, Yeadon, Pennsylvania 19050.

## JURISDICTION AND VENUE

12. This action arises under 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1343(a)(3) and (4)(civil rights).

13. Venue is proper pursuant to 42 U.S.C. §1391(b).

## FACTS

14. Yeadon Borough hired Plaintiff Everett K. Terry as a police office in August 2002 where he worked until the termination of his employment on or about November 4, 2010.

15. Officer Terry compiled and exemplary and blemish-free tenure as a police officer for the Borough through the entire duration of his employment.

16. On July 17, 2010, Officer Terry was married in a formal ceremony to his common law wife, Peg ("Mrs. Terry). Officer and Mrs. Terry had been in a relationship since May 15, 1998, a period of more than twelve years, and the couple had already considered themselves to be husband and wife. Mrs. Terry is a Caucasian woman of Irish descent.

17. Although Office Terry was initially a part time office for the police department, in 2005, he was promoted to a full time position as an officer with the Yeadon police department.

18. In connection with his promotion to full time employment, Officer Terry met with then Borough Finance Director, Terri Vaughn ("Ms. Vaughn"), to complete the paperwork in connection with his promotion.

19. While filling out the medical insurance forms, Officer Terry did not initially include Mrs. Terry in the paperwork. Ms. Vaughn handed the paperwork back to Officer Terry and asked why he had not included Mrs. Terry on the medical insurance forms.

20. Officer Terry explained to Ms. Vaughn that he and Mrs. Terry had never been "officially" married, but Ms. Vaughn replied that since Officer and Mrs. Terry had been together so long that she was in fact his common law wife and life partner and was therefore eligible to be placed on his insurance. This entire exchange was witnessed by fellow Officer Ron Kent. Officer Terry did as he was instructed and went back to work.

21. In or about July 2010, Officer Terry uploaded photos of his wedding ceremony with Mrs. Terry onto his Facebook page website. In those photos, it clearly showed that he was African-American and that his wife was Caucasian.

22. In August 201, Police Chief Donald Molineux, who is Caucasian, approached Officer Terry and asked him who was on his medical coverage. After telling Chief Molineux that it was himself and his wife, Chief Molineux stated that he saw no issues with that, but then told him that Mayor Jones-Butler, who is African-American, wanted to speak to him about his benefits and coverage.

23. Officer Terry went to Mayor Jones-Butler's office and the Mayor told him that she had noticed from his photos on his Facebook page that he had just gotten "married." She then accused him of having his wife on his health insurance coverage which the Mayor maintained should not have been the case unless they were technically, formally married at the time Officer Terry signed up for benefits in 2005..

24. In response, Officer Terry recounted the events related to his placing Mrs. Terry on his policy, specifically, that he had been instructed to do so at the time. He then stated that he did not want to keep any payments or benefits which were not his, if that was in fact the case, and asked for a precise amount so he could know what to pay back if in fact he had been overpaid.

Mayor Jones-Butler stated that she would get back to him, but did not present Officer Terry with any figures at the time.

25. In September 2010, the Mayor finally got back to Officer Terry. She presented him with an ultimatum of two options. He was told that he must immediately resign and repay the full amount of the benefits or else he would be fired from his job and prosecuted for wrongfully taking money from the Borough.

26. In great distress, Officer Terry talked to Chief Molineux who was highly supportive of the innocence of Officer Terry. The Chief suggested a payoff plan with at most a short term suspension since Officer Terry did not intentionally do anything to violate any laws or procedures or intentionally take any funds.

27. Despite making multiple payoff proposals to the Mayor, she rejected every proposal, even though the funds would have been repaid rapidly.

28. Officer Terry requested a meeting with the Borough Council.

29. Officer Terry attended a meeting with the Borough Council in mid-September, where he was subjected to particularly hostile questioning from a Caucasian member, Jack Byrne, and several of the African-American female members. At the meeting, Police Union Attorney Joseph Chipien and Attorney Scott Shields were also present.

30. On October 21, 2010, Officer Terry received a call from Chief Molineux that the Borough Council had taken a vote and it had been in Officer Terry's favor and that he could return to work and that he would be hearing back as to the repayment arrangements. Officer Terry was advised that all Council members had allegedly been present for the vote. Relieved at the outcome, Officer Terry continued to work.

31. On November 2, 2010, Mayor Jones-Butler confronted Chief Molineux and snapped angrily to him, "Don't think this is over!" in connection with Officer Terry's status.

32. On November 5, 2010, Officer Terry received an unexpected phone call from the Chief who told him that somehow the Borough Council, with fewer than all members present, had taken an unannounced, un-posted, and un-listed re-vote on the status of Officer Terry (which was in violation of the Sunshine Act under Pennsylvania law, 65 Pa.C.S.A. §709). The Chief further explained that had he known or been notified, he would have been there.

33. Despite efforts by multiple fellow employees of the Borough, including Chief Molineux and the attorneys, Officer Terry was officially terminated and has not worked for the Borough since.

34. Although Officer Terry has repeatedly returned to testify on court cases, in fact over 200 times, as was his duty as a police officer, he has not been returned to work as a police officer at either the Borough or elsewhere. He currently works as a security guard at a greatly diminished level of compensation.

35. Subsequent to his termination, several interesting and compelling facts have come to light. One fact is that Officer Terry was the only member of an interracial couple who had been employed by the Borough at the time of his firing; presumably there are now none.

36. Even more damning, however, was the treatment of other Borough employees who were not part of an interracial marriage who also received overpayments of benefits in similar fashion to Officer Terry. Officer Terry learned of at least three other Borough employees who were also found to have been overpaid benefits and all three were treated differently, and better than Officer Terry, and allowed to simply repay the benefits, without termination.

Interestingly the two other African-American male employees who were overpaid, including Borough Council President Asher Kemp, Jr., were married to African American women, unlike Officer Terry, who has a Caucasian wife.

37. The Defendants selected the Officer Terry for disproportionately unfavorable treatment compared to other citizens, including the denial of basic rights within the community, for example, treating him differently than and worse than those who were not part of an interracial marriage, and was an impermissible form of discrimination on the basis of race.

38. The Defendants have failed to justify in any way their basis for treating Officer Terry differently than other Borough employees who received overpayments in the form of benefits.

39. The Defendants have singled out Officer Terry for oppression by the wrongful use of government powers, selectively applied against Officer Terry to oppress and harass him.

40. The wrongful use of governmental powers against Officer Terry constitutes a violation of his rights as a citizen of the Commonwealth and the United States.

41. The conduct of Defendants has caused the Officer Terry extensive damages, both financial and non-financial, including the destruction of his rights in the community, financial cost and expense related to litigation, severe emotional distress, and damages to his reputation and livelihood in the community.

42. The conduct of the Defendants was undertaken through power, corruption and lies and with the deliberate intent to damage and harm the reputation and standing of Officer Terry in the community as well as to cause him financial damage by terminating his employment and ability to be hired by another police department.

**COUNT I**

**PLAINTIFF V. ALL DEFENDANTS**

**VIOLATION OF CIVIL RIGHTS—42 U.S.C. §1983**

43. Plaintiffs hereby incorporate by reference paragraphs 1 through 42 above as though fully set forth herein.

44. Plaintiff has vested and protectable Constitutional rights which include freedom from racial discrimination, harassment and oppression by governmental entities and the wrongful use of the force of the government.

45. As set forth above, Plaintiff has incurred extensive expenses and damages as a result of the Defendants' conduct, including, but not limited to loss of employment income.

46. In acting as aforesaid, the Defendants have acted in contravention of the Constitutional rights of the Plaintiff, inter alia,

(a) treating Officer Terry differently than and worse than other Borough employees as a result of impermissible racial discrimination;

(b) failing to conduct Council meetings and make employment decisions in compliance with local, state and federal laws; and

(c) terminating Officer Terry's employment as a police officer for the Borough on the basis of impermissible racial discrimination and by failing to use proper procedures.

47. The Defendants have selectively applied their powers maliciously in order to deprive Plaintiff of his federal Constitutional and statutory rights.

48. Upon information and belief, the Defendants have used their governmental offices to destroy the Plaintiff' constitutional rights.

49. In acting as aforesaid, the Defendants have deliberately and arbitrarily abused the power of their offices.

50. In acting as aforesaid, the Defendants have engaged in arbitrary, capricious, irrational and abusive conduct.

51. Defendants have acted under color of state law with intent to unlawfully deprive the Plaintiff of his rights without substantive due process or procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

52. Defendants have further acted under color of state law with the intent to unlawfully deprive the Plaintiff of his rights in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

53. The Defendants' acts constitute the official policy, custom and practices of the Borough.

54. In terminating Plaintiff's employment on the basis of his race and the race of his wife, in addition to their other unlawful conduct, Defendants have acted intentionally, willfully, wantonly, and with callous and reckless disregard for the Plaintiff's constitutional rights.

55. As a direct and proximate result of the Defendants' conduct, the Plaintiff has and shall sustain monetary damages including attorneys' and related litigation costs and other damages to be established at the trial of this matter.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants jointly and severally for:

(1) Compensatory damages;

(2) Punitive damages;

(3) Counsel fees and court costs; and

(4) Such other and further relief as this Court deems appropriate.

**COUNT II**

**PLAINTIFF V. DEFENDANTS**

**DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS—42 U.S.C. §1983**

56. Plaintiff hereby incorporates by reference paragraphs 1 through 42 above as though fully set forth herein.

57. Plaintiff has a protected liberty interest in his right to live without arbitrary governmental interference.

58. The acts of Yeadon Borough and its agents, as set forth above, constitute arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiff's liberty interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

59. Defendants have acted under color of state law with the intent to unlawfully deprive the Plaintiff of his liberty without substantive due process or procedural due process in violation of the Fourteenth Amendment to the United States Constitution.

60. The Defendants' acts constitute the official policy, custom, and practices of the Borough.

61. In depriving the Plaintiff of his liberty without due process of law, the Defendants have acted intentionally, willfully, wantonly, and with callous and reckless disregard for Plaintiff's constitutional rights.

62. As a direct and proximate result of Defendants' conduct, Plaintiff has and shall sustain monetary damages including lost profits, engineering and construction fees, attorneys' fees, costs incurred in development, court costs and other damages to be established at the trial of this matter.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants jointly and severally for:

(1) Compensatory damages;

(2) Counsel fees and court costs;

(3) Punitive; and

(4) Such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all claims set forth herein.

By:____________________

Arthur D. Goldman, Esquire
Kenneth J. Zoldan, Esquire
Attorneys for Plaintiffs
P.O. Box 115
Paoli, Pennsylvania 19301
(484) 343-2856