IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EVERETT K. TERRY,** : | |
| Plaintiff : | |
| : | |
| v. : | |
| : | CIVIL ACTION NO. 12-6205 |
| : | |
| **YEADON BOROUGH,** *et al.*, : | |
| Defendants. : | |

MEMORANDUM OPINION

Rufe, J.                                                                                                    August 19, 2015

      Plaintiff, a former police officer in Yeadon Borough, Pennsylvania, has brought suit against Yeadon Borough, and the officials who were in office at the time he was fired from his position: the mayor, Dolores Jones-Butler, and Council members Asher Kemp, Jr., Jack Byrne, John Holden, Florence McDonald, Deborah Robinson-Howell, and Denise Stinson. Plaintiff asserts that his termination was unlawfully motivated by racial animus and failed to afford him due process protections. After discovery, Defendants have moved for summary judgment. For the reasons stated below, Defendants' motion will be granted.[1]

**I. BACKGROUND**

      In this case, the material facts are generally undisputed; at issue are the motivations underlying those facts. Where the facts are disputed, they are viewed in the light most favorable to Plaintiff as the non-moving party. Plaintiff Everett Terry was hired as a full-time police officer for Yeadon Borough in 2005. As part of his employment, Plaintiff filed for medical

---

[1] Defendant Yeadon Borough filed a counterclaim against Plaintiff, stating that "[i]n the event that any liability is found against Yeadon Borough . . . said liability shall be reduced and/or offset by the amount of spousal medical benefits provided to Margaret Terry by and through Yeadon Borough's health insurance plan, during the period of time Everett Terry was employed by Yeadon Borough and prior to his marriage in 2010." Answer and Counterclaim [Doc. No. 23] at 12. As the Court grants Defendants' motion, the counterclaim will be dismissed.

insurance for himself and for Margaret Terry, whom he identified as his wife.  According to Plaintiff, he told the finance director for Yeadon Borough that although he and Margaret were not legally married, he considered her his wife, and the finance director told him to list Margaret as his spouse.[2]  Margaret was in fact still married to someone else at the time (although Plaintiff may not have been aware of that fact until divorce proceedings were initiated in 2007).  On July 17, 2010, Everett and Margaret were married, and Everett posted photographs on his Facebook page.  This triggered an inquiry by Defendant Jones-Butler into why Plaintiff had described himself as married five years earlier and had been receiving benefits for his spouse during that time.  Although Plaintiff had the support of the Chief of Police and an unblemished service record, and although he appeared before the Yeadon Borough Council to explain the situation on October 4, 2010, he was notified by letter dated October 15, 2010, that he was suspended, effective immediately, and that the Council would consider whether to terminate Plaintiff's employment at an October 21, 2010 Council meeting.  As will be discussed below, the parties dispute what occurred on October 21, 2010, but there is no dispute that Council voted to terminate Plaintiff's employment at a meeting held on November 4, 2010.  Plaintiff was notified by letter dated November 8, 2010, of his removal as a police officer for Yeadon Borough.

     Plaintiff asserts that the termination procedures did not comply with the requirements of due process, and also alleges that he lost his job for an improper reason.  Thus, the question of the motivation that drove the Council's action:  Defendants contend that Plaintiff's misrepresentation of his marital status for five years, and his obtaining of benefits for Margaret, resulted in a loss of trust in Plaintiff that left him unsuited to act as a police officer; Plaintiff

---

[2] Plaintiff's testimony on this point is supported by a fellow officer who was present at the time the paperwork was completed.  Kent Dep. at 23-26.

contends that the wedding pictures showed he was in an interracial marriage, and that Defendants, particularly Jones-Butler, acted against him because of racial animus, and ignored due process requirements to accomplish this end.  The Court assumes that Plaintiff acted in good faith at all times; the reasons for his actions are not relevant to resolution of the motion.

**II.    STANDARD OF REVIEW**

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[4] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[6] Further, a court may not weigh the evidence or make credibility determinations.[7] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[8] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is

---

[3] Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[7] *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[9] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

unnecessary and would only cause delay and expense."[10] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[11]

## III.   DISCUSSION

### A. Racial Discrimination

Discrimination against an individual because he is in an interracial relationship violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment.[12]  Allegations of "departures from the normal procedural sequence," or disparate treatment of those otherwise "similarly situated"[13] may support an equal protection claim.[14]  Racial discrimination claims, whether based in statute or the Constitution, are analyzed under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*.[15]  That means Plaintiff must first make out a *prima facie* case of discrimination, after which the burden of production shifts to Defendants to articulate a non-discriminatory reason for the adverse employment actions, and then the burden shifts back to Plaintiff to show that the proffered explanations are pretextual.

The Third Circuit has characterized the *prima facie* case requirement as posing a "low bar."[16]  In order to establish a *prima facie* claim in the employment context, Plaintiff must show

---

[10] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[11] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[12] *Loving v. Virginia*, 388 U.S. 1 (1967).

[13] *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (citing *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).

[14] *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 562 (3d Cir. 2002) (quoting *Reno v. Bossier Parish Sch. Bd.*, 520 U.S. 471, 487 (1997)).

[15] 411 U.S. 792, 802–03 (1973).

[16] *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

(1) that he belongs to a protected class; (2) that he was qualified for the position; and (3) that he was subject to an adverse employment action; (4) under circumstances that raise an inference of intentional discrimination.[17]  For purposes of summary judgment, Plaintiff has made out the first three elements of the claim.  The fourth element, however, is more difficult for Plaintiff to establish in this case.  Plaintiff has no direct evidence of racial animus.  There is no evidence that any of the Council members who voted to terminate Plaintiff's employment made any statements that suggested prejudice against Plaintiff's interracial marriage.  Instead, Plaintiff contends that the attitudes of Council members at the hearing were of disbelief toward Plaintiff,[18] that an unidentified Council member "smirked" when Plaintiff mentioned his wife at the hearing,[19] and that "everyone knows" that Defendant Bynes is prejudiced.[20]  Against several Defendants, Plaintiff offers no basis at all for inferring a discriminatory motive.  Primarily, however, Plaintiff grounds his claim on what he asserts is Defendant Jones-Butler's disapproval of interracial marriages.

Plaintiff testified in his deposition that Jones-Butler showed an inexplicable interest in his marriage, although she never made any statements to him suggesting disapprobation, but  a former mayor of Yeadon Borough, Jacqueline Mosley, told Plaintiff that Defendant Jones-Butler "was going to get rid of [Plaintiff] . . . [b]ecause of his wife; she's white."[21]  However, in her deposition, Ms. Mosley did not testify that Mayor Jones-Butler made such a statement to her;

---

[17] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

[18] Terry Dep. at 89-90.

[19] Terry Dep. at 80-81.

[20] Terry Dep. at 81.

[21] Terry Dep. at 79.

Ms. Mosley testified that she was "pretty sure" that she asked Defendant Jones-Butler about Plaintiff but that Ms. Jones-Butler "blew her off" (i.e., did not explain).[22] Ms. Mosley testified that it was her "personal thought" that "there may have been some prejudice there" and that there may have been "scuttlebutt" around Yeadon Borough Hall to that effect.[23] But a reasonable factfinder could not base a finding of discrimination on a facial expression or on generalizations as to what "everyone" knows or the "scuttlebutt" says. Plaintiff's testimony regarding what Ms. Mosely told him is inadmissible hearsay unsupported by Ms. Mosely's own testimony, and Ms. Mosley's testimony of her "personal thought" (read speculation) as to the possible motivation of someone, is patently insufficient to present a triable issue of fact. Although there is evidence that Defendant Jones-Butler advocated for Plaintiff's termination, the evidence does not support that it was for an improper reason.[24] Therefore, Plaintiff has failed to establish a *prima facie* case of discrimination.

Even if the Court concluded that Plaintiff could establish his *prima facie* case, summary judgment would still be warranted. Defendants have proffered a legitimate reason for Plaintiff's termination: that he listed Margaret as his spouse and obtained medical insurance benefits for her in that capacity beginning in 2005 even though the couple did not marry until 2010 (and Margaret did not divorce her previous husband until at least 2007). Defendants therefore have met their burden "to articulate a legitimate, non-discriminatory reason for the adverse

---

[22] Mosley Dep. at 22-23.

[23] Mosley Dep. at 19-22.

[24] Both sides argue as to the meaning of the fact that Defendant Jones-Butler's son is in an interracial marriage, as are several other relatives. Jones-Butler Dep. at 82-83. The Court finds this is not probative evidence precisely because the Court, or a factfinder, would have to speculate as to what bearing this has on how Defendant Jones-Butler would react to a police officer's interracial relationship.

employment action."[25]  Thus, to survive summary judgment, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[26]

Plaintiff argues that he has met this burden because others who received insurance benefit overpayments were permitted to pay back the money without losing their positions while he was not and that none of the others were involved in interracial relationships.  The other overpayment cases involve the former mayor and Council members.  In 2013, the Pennsylvania State Ethics Commission issued a series of final adjudications that concluded that the officials violated the Pennsylvania Ethics Act[27] by receiving payment from the Borough for the costs of private health insurance for periods reaching back as far as 2007.  It is not clear from the record when the impropriety came to light, but it appears to have been in 2011, after Plaintiff was fired.

In order to give rise to an inference of discrimination, Plaintiff must be able to prove that these individuals were "similarly situated" to him.[28]  This Plaintiff has failed to do.  The mayor and Council members were elected officials, not employees, and as such could not be fired.  In addition, these individuals include Defendants in this litigation:  that people might consider their own transgressions differently than someone else's gives rise more easily to an inference of hypocrisy (or perhaps of human nature) than of racial discrimination.  In any event, because

---

[25] *Makky*, 541 F.3d at 214.

[26] *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

[27] 65 Pa. C.S. § 1101, *et seq.*

[28] *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (holding that a plaintiff may support an assertion that an invidious discriminatory reason was more likely than not a determinative cause by showing that "the employer has treated more favorably similarly situated persons not within the protected class") (citation and quotation marks omitted)).

these individuals were not "similarly situated" to Plaintiff, the purported disparate treatment cannot serve as a basis for finding pretext.[29] The question is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."[30] Plaintiff has not met his burden of showing an unlawful motivation on the part of Defendants.

### B. Procedural Due Process

"A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process."[31] Plaintiff indisputably had a constitutionally protected property interest in his position as a police officer,[32] and absent extraordinary circumstances (not present here) due process therefore required his employer to provide him with a hearing, an explanation of the evidence in support of the charges, and an opportunity to respond with a defense.[33] A pre-termination hearing may be brief and informal as long as it allows for a "determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."[34]

In this case, the investigation started after Plaintiff's marriage on July 17, 2010. On October 4, 2010, Plaintiff appeared before the Council for a hearing. Plaintiff acknowledges that his union assisted him and that he had legal representation at the hearing, and that he had an opportunity to explain to Council why he had listed Margaret as his spouse on his insurance

---

[29] *See Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008).

[30] *Fuentes*, 32 F.3d at 765.

[31] *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (internal quotation marks and citation omitted).

[32] *Dee v. Borough of Dunmore*, 549 F.3d 225, 230 (3d Cir. 2008).

[33] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

[34] *Schmidt*, 639 F.3d at 596-97 (internal quotation marks and citations omitted).

coverage.[35]  On October 15, 2010, Plaintiff was notified that he was suspended and that Council would vote on whether to terminate him on October 21, 2010.  Plaintiff argues that on October 21, the Council voted not to terminate him, reinstated him, and then had an unannounced re-vote on November 4, 2010, without new evidence or notice to Plaintiff, and terminated his employment at that time.  The evidence does not support Plaintiff's claim.

      The minutes of the Council meetings before the Court do not state that any vote occurred on October 21; instead, there is only reference to a personnel matter that was tabled until a later meeting.  Plaintiff testified in his deposition that on October 22, he was told by Police Chief Molineux that the Borough solicitor had told Chief Molineux that there had been a vote and that Plaintiff could return to work, but that Defendant Jones-Butler was angry about the situation.[36]  Chief Molineux testified in his deposition that he was not at the meeting on October 21, but that "[t]hat was a situation in regards to – I don't know if the notice wasn't made to him or whatever, but, yes, you know, I was told for him to return the next day."[37]  To his recollection, that information came from the Borough solicitor's office.[38]  Chief Molineux did not testify that he was told that Council had voted to maintain Plaintiff's employment.  With regard to Jones-Butler, Chief Molineux testified that "she wasn't pleased with Officer Terry's appeal process of trying to appeal the situation, and she made a statement … that he could be arrested, you know, for this type of violation."[39]

---

[35] Terry Dep. at 72-76.

[36] Terry Dep. at 94-95.

[37] Molineux Dep. at 20.

[38] Molineux Dep. at 22.

[39] Molineux Dep. at 24.

Further undermining Plaintiff's argument that a vote occurred on October 21 is the deposition testimony of Defendant Kemp, uncontested by Plaintiff, that Council must vote to dismiss someone in a public meeting, not in executive session.[40] The minutes of the Council meetings show only one vote, at a special meeting on November 4, 2010.[41] Plaintiff argues that the matter described as tabled in executive session on October 21, 2010, was the vote in his favor, but does not explain why it did not occur at the public meeting or why the minutes would not reflect what actually occurred.

The admissible evidence shows that the only vote on whether to terminate Plaintiff's employment occurred on November 4, 2010, and that Council voted 4-1 in favor of termination. Plaintiff has not shown any violation of due process in connection with that meeting. Notice of the meeting had been placed in the local newspaper on November 3, 2010, as required by law.[42] There is no evidence that Plaintiff was personally notified of the meeting, but due process does not require that an individual must be present at the actual vote with regard to his termination (and indeed, Plaintiff does not state that he attended the meeting on October 21, which the letter of October 15 informed him was when Council would vote). As with the discrimination claim, Plaintiff has supported his claim only with his own hearsay testimony that a Borough official told Chief Molineux that a vote had been in Plaintiff's favor on October 21, 2010. There is no admissible evidence of such procedural irregularities that would support a finding that Plaintiff was denied due process.

---

[40] Kemp Dep. at 56.

[41] Def. Exh. 5.

[42] Def. Exh. 6.

**IV.    CONCLUSION**

The question to be decided is whether there is sufficient evidence from which a reasonable factfinder could conclude that racial bias animated the decision to terminate Plaintiff's employment or that Defendants failed to afford Plaintiff due process. The Court holds that there is not. It may be that Defendants' actions were unfair or unreasonable, but that does not mean that they violated the Constitution. Therefore, summary judgment will be granted in Defendants' favor. An order will be entered.